IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

MARK HUSCHAK,

           Petitioner,

    vs.                          **Case No. 08-3257-RDR**

JAMES W. GRAY, Commandant,
USDB-Ft. Leavenworth,

           Respondent.

————————————————————

<u>**MEMORANDUM AND ORDER**</u>

    Petitioner is a military prisoner at the Disciplinary Barracks at Fort Leavenworth, Kansas.  This case presents a challenge to the military's program of mandatory supervised release.  Petitioner was placed on mandatory supervised release ("MSR"), but his release was revoked.  Pursuant to 28 U.S.C. § 2241, petitioner asks this court: to issue an order releasing petitioner from confinement; to issue an injunction preventing the Air Force from imposing involuntary mandatory conditions of release; and to certify that his supervision following release and his subsequent return to confinement were unlawful.

    <u>Statement of facts</u>

    Petitioner was an active duty member of the United States Air Force and was a defendant in court-martial proceedings.  On September 23, 2002 petitioner pleaded guilty and was convicted of numerous crimes.  These crimes included various sex offenses involving a minor female and the possession of child pornography.

Petitioner was sentenced to confinement for ten years.  He was also discharged from the military and incurred other penalties.  His sentence was reduced to eight years confinement by the convening authority.  Petitioner appealed his conviction and sentence to the United States Air Force Court of Criminal Appeals.  The sentence and convictions were affirmed.  United States v. Huschak, 2004 CCA LEXIS 184 (6/28/2004).  Petitioner also appealed to the United States Court of Appeals for the Armed Forces.  Again, his convictions and sentence were affirmed.  United States v. Huschak, 61 M.J. 154, 2005 CAAF LEXIS 463 (4/29/2005).  Petitioner applied for habeas corpus relief through the military courts.  This was denied upon consideration and reconsideration.  Huschak v. United States, 63 M.J. 470, 2006 CAAF LEXIS 969 (7/19/2006); Huschak v. United States, 2006 CAAF LEXIS 1524 (9/15/2006).  None of the issues raised in this proceeding were raised by petitioner before the military courts.

Before petitioner was placed on MSR, petitioner's maximum release date ("MaxRD") was September 22, 2010 and his minimum release date ("MinRD") was December 2, 2007.

On May 21, 2007 the Air Force Clemency and Parole Board ("AFC&PB") notified petitioner that he would be released from confinement and placed on MSR from his MinRD until his MaxRD assuming he did not violate the conditions of MSR.  The notice directed petitioner to prepare an acceptable release plan, which

2

would include an appropriate residence and employment, for approval by the AFC&PB and his prospective supervising probation officer 60 days before the MinRD.  Petitioner was warned that the failure to provide the required plan could result in the loss of good conduct time and the loss of earned abatement.

Petitioner was released on MSR on November 30, 2007, a few days before his MinRD.  Petitioner received a certificate of supervised release which set forth a number of conditions which petitioner was expected to follow while on MSR.  The day before, on November 29, 2007, petitioner refused to sign the certificate directly below a paragraph which stated that petitioner understood and promised to abide by the conditions and that petitioner also understood that a violation of any condition would be considered a violation of the supervision agreement.  Petitioner did sign the certificate on December 3, 2007 when he was with his supervising officer.

Petitioner failed to abide by the conditions of MSR in two ways.  He failed to participate in sex offender treatment and he failed to obtain employment.  Petitioner expected to be returned to prison for refusing sex offender treatment.  Therefore, he saw no point to obtaining employment.  On March 6, 2008 the AFC&PB suspended petitioner's supervised release.  On March 13, 2008 a parole violator arrest warrant was issued.  On April 18, 2008 petitioner was returned to confinement.  A supervision violation

hearing was conducted.   On September 3, 2008 the AFC&PB revoked petitioner's supervised release.   Credit for street time was denied.   The AFC&PB found that petitioner was never in material compliance with the conditions of supervision.   After petitioner was returned to prison, his sentence was computed again to account for the loss of street time and any credits earned for early release.   Currently, petitioner's adjusted MaxRD is January 24, 2011 and his MinRD is April 26, 2010.

<u>Operation of Parole, MSR and Good Conduct Time</u>[1]

---

[1] In general, the court has drawn our understanding of the parole, MSR and good conduct time programs from the following sources:
- - Department of Defense Instruction (DoDI) 1325.7 (2001) - Attachment 12 to Doc. No. 15 and Appendix L to Doc. No. 5.

- - Memorandum of Understanding Among Department of Defense Clemency and Parole Boards and Corrections Headquarters Agencies (2006) - Attachment 13 to Doc. No. 15.

- - Department of Defense Directive (DoDD) 1325.4 (2001) - Attachment 14 to Doc. No. 15.

- - DoD, Sentence Computation Manual 1325.7 (2004) - Attachment 15 to Doc. No. 15.

- - United States Disciplinary Barracks Regulation No. 600-1 (2008) - Attachment 16 to Doc. No. 15.

- - Air Force Instruction 31-205, Chapter 10 (2004) - Attachment 17 to Doc. No. 15.

- - DoD Policy on Abatement of Sentences to Confinement - Appendix J to Doc. No. 5.

- - Air Force Instruction 31-215 (1964) - Appendix K to Doc. No. 5.

In the military, release from confinement prior to the completion of the full sentence is possible under parole, MSR and good conduct time. A voluntary parole program existed before MSR and has continued since. Under this program, a military inmate volunteers to be released subject to conditions governing his behavior while on release. One condition is that the inmate submit a parole plan and agree to abide by the plan. The parole period extends to the completion of the inmate's full sentence. In return for release on parole, the inmate volunteers to waive any credit against his sentence for good time up to the date of release on parole. If the inmate violates his conditions of parole, then he may be returned to confinement to serve the remainder of his sentence. Upon revocation, the clemency and parole board may or may not grant credit against an inmate's sentence for his "street time." There is no right to parole in the military system. Parole is granted in the discretion of the AFC&PB for Air Force service members.

MSR started in 2001. Prior to that, if an inmate was not accepted for parole and remained confined until his MinRD, the inmate would be unconditionally released without supervision. This allowed inmates who may have been judged too great a risk or otherwise unworthy of parole, to be released without the conditions

- - Air Force Instruction 31-205 (2004) - Appendix L to Doc. No. 5.

imposed upon the release of inmates who were granted parole.

To change this situation and better achieve the goals of rehabilitation, the military started the MSR program. The regulations setting forth the MSR program describe the purpose of the program.

> The supervised release of prisoners who are not granted parole prior to their MRD [minimum release date] is a highly effective technique to provide an orderly transition to civilian life for released prisoners and to better protect the communities into which such prisoners are released. Accordingly, it shall be the policy of the Department of Defense to use supervised release in all cases except where it is determined by the Service Clemency and Parole Boards to be inappropriate.

DoDI 1325.7 at § 6.20.1 (2001).

Unlike the parole program, release on MSR is not voluntary. The AFC&PB normally places inmates on MSR if they are guilty of sex offenses and have a sentence of 12 months or greater. AFI31-205 § 10.22 (2004). The AFC&PB's decision is final. Id. Although the program is involuntary, an inmate placed on MSR is responsible for developing a release plan for the approval of the AFC&PB and must agree to abide by the conditions of MSR set forth by the AFC&PB. The willful refusal to prepare a release plan may result in the loss of good conduct time and any abatements for the failure to follow an order or dereliction of duty. Memorandum of Understanding Among Department of Defense Service Clemency and Parole Board and Corrections Headquarters Agencies, § 3(c)1.

Release from confinement on MSR is considered acceptance of

6

the terms and conditions of supervised release.  A refusal to
depart the correctional facility may be considered a failure to
follow an order or dereliction of duty and result in a loss of good
conduct time or other abatements of sentence.  Memorandum of
Understanding, § 3(e)(5).  Inmates placed on MSR are deemed "as if
on parole" until the expiration of their sentence to confinement.
AFI31-205 § 10.22 (2004).  They are under the supervision of a U.S.
Probation Officer.  If a person violates the conditions of MSR, his
release may be revoked under procedures equivalent to a violation
of parole conditions.

Good conduct time is accorded to every military prisoner
serving a non-life sentence of confinement.  DoDI 1325.7 § E26.1.1
(2001).  It is considered an abatement of a sentence to
confinement.  There are other types of abatement, such as earned
time abatement, but any difference is not relevant to the issues in
this case.  A sentence that has expired with the allowance for good
conduct time or other abatement, may not be revived for the purpose
of forfeiting good conduct time or other abatement.  Memorandum
Clarifying DoD policy on Abatement of Sentences to Confinement, §
A7.1.4 (2004).

Summary of issues

Petitioner raises seven claims:  1) that the AFC&PB is not
statutorily authorized to impose involuntary conditions of release
under the MSR program; 2) that the AFC&PB increased petitioner's

punishment by placing petitioner on MSR and therefore violated the Double Jeopardy Clause; 3) that placement on MSR deprived petitioner of his liberty interest in good conduct time and earned abatement without due process; 4) that imposing confinement after release on MSR violates the regulatory prohibition against reviving a sentence for the purpose of forfeiting abatement; 5) that the imposition of MSR conditions violated due process because MSR was not announced as part of the sentence and the AFC&PB standards fail to meet due process standards; 6) petitioner's guilty pleas were improvident because the possibility of MSR was not disclosed to petitioner before his guilty pleas were accepted; and 7) the MSR condition of sex offender treatment violates petitioner's Fifth Amendment right against self-incrimination.

<u>Exhaustion and Waiver</u>

The Tenth Circuit discussed the general principles of exhaustion and waiver in <u>Roberts v. Callahan</u>, 321 F.3d 994, 995 (10th Cir.) <u>cert. denied</u>, 540 U.S. 973 (2003):

> The federal civil courts have limited authority to review court-martial proceedings. <u>Burns v. Wilson</u>, 346 U.S. 137, 142, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). If the grounds for relief that Petitioner raised in the district court were fully and fairly reviewed in the military courts, then the district court was proper in not considering those issues. <u>See id.</u>; <u>see also</u> <u>Lips v. Commandant, United States Disciplinary Barracks</u>, 997 F.2d 808, 811 (10th Cir. 1993). Likewise, if a ground for relief was not raised in the military courts, then the district court must deem that ground waived. <u>See</u> <u>Watson v. McCotter</u>, 782 F.2d 143, 145 (10th Cir. 1986). The only exception to the waiver rule is that a petitioner may obtain relief by showing cause and actual prejudice.

See Lips, 997 F.2d at 812.

Petitioner claims that there is no review available for his claims by the AFC&PB or the military court system.  He notes that AFC&PB decisions regarding MSR are final and not subject to administrative review.  AFI 31-205 at § 10.22.  In any event, he lodged an objection to his MSR with the AFC&PB, which was denied. Petitioner further notes that the Air Force Court of Criminal Appeals has stated that it does not have jurisdiction to review the administration of MSR (U.S. v. Pena, 61 M.J. 776, 778 (A.F.C.C.A. 2005)) and that the Court of Appeals for the Armed Forces has held that MSR is administrative in nature and based on executive authority.  United States v. Pena, 64 M.J. 259, 262 (C.A.A.F.) cert. denied, 550 U.S. 937 (2007).

Respondent argues that petitioner has waived this court's review of every ground for relief, except grounds five and seven, because he did not raise these claims in the military courts. Respondent asserts that grounds five and seven involve the "administrative consequences of the MSR" and therefore are not subject to review by the military courts.  Respondent also states, without citation to legal authority, that this court should not review grounds one, two, three, four and six because military courts in other cases have already addressed those issues.

As we read Roberts, the court should not review petitioner's claims if these claims have received full and fair review by the

military courts, or if petitioner waived the opportunity to present the claims to the military courts.  If some other person has raised claims similar to petitioner's, the review of those claims by the military courts does not count against petitioner.[2]

We find that the military courts have not given full and fair consideration to the claims raised by petitioner.[3]  The question of waiver remains.  The court shall address the issue of waiver when the court discusses each of petitioner's claims.

Standard for relief

Habeas relief is available under 28 U.S.C. § 2241(b)(3) to prisoners who are in custody "in violation of the Constitution or laws or treaties of the Unites States."

Issue # 1 - Statutory authority for MSR

Petitioner contends that his confinement is illegal because the AFC&PB is not statutorily authorized to impose involuntary conditions of release under the MSR program.  Respondent argues that the military is statutorily authorized to provide a system of

---

[2] The court further notes that most of petitioner's claims are different in substance from the claims raised in the <u>Pena</u> opinions and in <u>U.S. v. Seawell</u>, 2008 WL 65113 (A.F.Ct.Crim.App. 2007).

[3] Respondent argues that the court should apply the four-factor test in <u>Dodson v. Zelez</u>, 917 F.2d 1250, 1252-53 (10th Cir. 1990) in deciding whether to review petitioner's claims.  We do not believe this is necessary because there was no consideration whatsoever of petitioner's claims by the military courts.  See <u>Roberts</u>, 321 F.3d at 997 (four-part test is not an additional jurisdictional hurdle applied after it is determined that issues were not fully and fairly considered by military courts).

parole under 10 U.S.C. § 952 and that the MSR program is simply a type of parole system.  Petitioner contends that this construction is contrary to the plain language of § 952.

The authority of the Air Force Court of Criminal Appeals and the U.S. Court of Appeals for the Armed Forces is limited to reviewing proceedings with respect to the findings and sentence approved by the convening authority.  10 U.S.C. §§ 866(c) & 867(c). In U.S. v. Pena, 64 M.J. 259, 264 (C.A.A.F.) cert. denied, 550 U.S. 937 (2007), the court found that it did not have the authority to invalidate the MSR program on the basis of a general challenge to the authority of the Department of Defense.  Given this finding, it would be futile for petitioner to raise his first claim for relief before the military courts and, therefore, he did not waive consideration of the issue by this court.  See Wilson v. Jones, 430 F.3d 1113, 1118 (10th Cir. 2005) cert. denied, 549 U.S. 943 (2006) (habeas petitioner is not required to exhaust state remedies if exhaustion would be futile); Morris v. Dretke, 413 F.3d 484, 492 (5th Cir. 2005) (exhaustion is not required if it would plainly be futile).

The court rejects petitioner's first claim.  Section 952 is broad and plain.  It states in part:  "The Secretary concerned may provide a system of parole for offenders who are confined in military correctional facilities . . ."

Parole has been described by the Supreme Court as follows:

11

> "The essence of parole is release from prison, before the completion of sentence, on the condition that the prisoner abide by certain rules during the balance of the sentence. Under some systems, parole is granted automatically after the service of a certain portion of a prison term. Under others, parole is granted by the discretionary action of a board, which evaluates an array of information about a prisoner and makes a prediction whether he is ready to reintegrate into society."

> "Its purpose is to help individuals reintegrate into society as constructive individuals as soon as they are able, without being confined for the full term of the sentence imposed."

Morrissey v. Brewer, 408 U.S. 471, 477-78 (1972).

The system of MSR applied to petitioner is a parole system in which petitioner was required to serve the balance of his sentence outside of confinement on the condition that he abide by certain rules. It does not matter whether the conditions were voluntary or involuntary. As the Supreme Court stated, under some parole systems release is automatic. The essence of MSR conforms to the definition of parole. See also, DoDD 1325.4 § E2.1.6 (2001) (defining "parole" as conditional release from confinement under the guidance and supervision of a U.S. probation officer).

Contrary to petitioner's contention, the MSR program is consistent with the plain language of § 952 where Congress does not delineate whether the parole system must be voluntary or mandatory or whether the conditions of parole be agreed to or dictated. To prove that MSR was not authorized under § 952, petitioner attempts to compare MSR to the civilian system of supervised release under 18 U.S.C. § 3583. This is not persuasive. The federal civilian

system of supervised release differs from most parole systems because supervised release is imposed upon civilians by a court, instead of a parole board, as part of the sentence.  The period of actual confinement ordered at the time of sentencing is not shortened by supervised release under § 3583; in fact, it may be lengthened if supervised release is revoked.  This court need not decide whether the system of supervised release under § 3583 is a "parole" system.  That is not the issue here.  The question is whether MSR is a "parole" system.  We answer the question "yes."

Issue # 2 - Double Jeopardy

Petitioner argues that his confinement is illegal because the AFC&PB modified his sentence to place him on MSR which resulted in an increase in punishment in violation of the Uniform Code of Military Justice and the Double Jeopardy Clause.  This is an argument which could have been raised before the military courts. See Pena, 64 M.J. at 265-66.  No cause or prejudice is demonstrated for failing to raise the issue.  Therefore, pursuant to Roberts, the claim shall be considered waived.  See also, Watson v. McCotter, 782 F.2d 143, 145 (10th Cir.) cert. denied, 476 U.S. 1184 (1986).

Even if the issue was not waived, petitioner would not prevail for the following reasons.  First, the Supreme Court has recognized that the revocation of parole does not violate the Double Jeopardy Clause.  See United States v. DiFrancesco, 449 U.S. 117, 137

13

(1980); see also <u>Kell v. U.S. Parole Commission</u>, 26 F.3d 1016, 1020 (10th Cir. 1994) (parole determinations are not viewed as criminal punishment subject to the Double Jeopardy Clause); <u>U.S. v. Whitney</u>, 649 F.2d 296, 298 (5th Cir. 1981) (declining to extend the Double Jeopardy Clause to parole revocation proceedings because the purpose of parole revocation proceedings is not to punish a defendant for violation of criminal laws but to determine whether a parolee has violated the conditions of his parole). This court views MSR as a system of parole and, therefore, it does not implicate the Double Jeopardy Clause.

Second, we reject petitioner's claim that MSR "increases" punishment in violation of the Double Jeopardy Clause. Petitioner was sentenced to eight years of confinement. Had petitioner conformed to the conditions of MSR, he would have served less than eight years of confinement. However, his violation of the conditions will not cause petitioner to serve more than eight years of confinement. Therefore, MSR has not increased petitioner's punishment. The violation of conditions of parole leading to a loss of "street time" credit or good conduct time also does not constitute an increased punishment in violation of the Double Jeopardy Clause. See <u>Thomas v. United States</u>, 327 F.2d 795, 797 (10th Cir.) <u>cert. denied</u>, 377 U.S. 1000 (1964) (no increase in punishment where sentence was suspended and reinstated after a probation violation). Petitioner argues that if he had not been

14

forced to accept MSR, then he would have been released from confinement prior to eight years with the receipt of credit for good conduct. This is immaterial. The AFC&PB had the authority to place petitioner on MSR. Petitioner had no right to expect that he would serve less than eight years confinement, especially if he failed to abide by the conditions of MSR. See DiFrancesco, 449 U.S. at 137 (the Double Jeopardy Clause does not provide a defendant the right to know at any point in time what the exact limit of his punishment will turn out to be).

Petitioner seeks to contrast his fate under MSR to the system which existed prior to MSR. This is not the proper comparison to determine whether MSR increased his punishment. The proper comparison is whether release from confinement with conditions is an increase in punishment over confinement. It is not. Therefore, MSR did not increase petitioner's punishment.

Finally, as an adjunct to the Double Jeopardy argument, petitioner contends that MSR constitutes an illegal multiple punishment which is not authorized under the Uniform Code of Military Justice and the Rules of Court Martial. Petitioner notes that supervised release is not mentioned among the types of punishments listed in Rule 1003(b) of the Rules of Court Martial and that there is no language in the Rules of Court Martial which suggests that a sentence may be modified to a form of punishment

not authorized under Rule 1003(b).[4]   This argument serves to illustrate the similarity between MSR and parole.   MSR is not a separate punishment issued by a court martial panel or convening authority under the Rules of Court Martial.   It is a parole system for those already sentenced to confinement as authorized under § 952 and the regulations cited previously in this order.   Therefore, it is not a multiple punishment which violates the Double Jeopardy Clause.

Issue # 3 - loss of liberty interest without due process

Petitioner contends that the MSR program violated petitioner's liberty interest in good conduct time and earned abatement days without due process.   Petitioner did not raise this issue before the military courts, where review would be available.   U.S. v. Hagler, 7 M.J. 944, 949 (N.C.M.R. 1979) (challenging revocation of good conduct time as violation of due process requirements); U.S. v. Campagna, 6 M.J. 658 (N.C.M.R. 1978) (challenging constitution-ality of graduated good-time sentence credit); U.S. v. Corl, 6 M.J. 914, 917 (N.C.M.R. 1978) (same).   Therefore, petitioner has waived

---

[4] Rule 1003(b) of the Rules of Court Martial provides:

Subject to the limitations in this Manual, a court-martial may adjudge only the following punishments: (1) Reprimand. . . . (2) Forfeiture of pay and allowances. . . . (3) Fine. . . . (4) Reduction in pay grade. . . . (5) Restriction to specified limits. . . . (6) Hard labor without confinement. . . . (7) Confinement. . . . (8) Punitive separation. . . . (9) Death. . . . and (10) Punishments under the law of war. . . .

his right to review of this claim.

Even if there was no waiver, the court would reject petitioner's claim.  Petitioner claims that he earned good conduct time and abatement days which lessened his sentence of confinement, according to military regulations.  He argues that this abatement to his sentence was lost without due process through the operation of MSR.  Petitioner notes that the conditions of supervised release state that an inmate accepting parole waives all good conduct time earned up to his release date, but that this waiver is not applicable to the MSR program.  Respondent claims that petitioner received the benefit of his good conduct time because it was a factor in determining petitioner's MinRD which, in turn, determined when petitioner was eligible for release on MSR.

The court concurs with respondent's position.  Petitioner received the benefit of his good conduct time by its positive impact upon petitioner's MinRD.  When petitioner was placed on MSR, he was released from confinement (albeit with conditions) earlier than if he had not received credit for good conduct.  Petitioner, in effect, lost the benefit of his pre-MSR good conduct time when his MSR was revoked and he did not receive credit for his "street time" against his original sentence of confinement.  However, petitioner received due process when his MSR was revoked.

In prior cases, this court and other courts have found that parole regulations which operated to negate the impact of earned

17

good time upon a sentence of confinement did not violate the Constitution. See <u>Patterson v. Knowles</u>, 162 F.3d 574 (10th Cir. 1998) (Parole Commission regulation under which good time credits earned before parole lose effect after revocation of parole was permissible construction of good time statute which stated that "a prisoner shall be released at the expiration of his term of sentence less the time deducted for good conduct."); <u>Young v. Nickels</u>, 59 F.Supp.2d 1137 (D.Kan. 1999) (military regulation requiring release of prisoner at the expiration of sentence to confinement less good time is not inconsistent with confinement of prisoners whose parole has been revoked); <u>Noreen v. U.S. Army Clemency and Parole Board</u>, 2005 WL 1027097 (D.Kan. 2005) (accumulation of good time positively affects when a prisoner may be conditionally released, but has no further effect once an inmate accepts parole); <u>Sanders v. Nickels</u>, 2000 WL 134466 (D.Kan. 2000) (repeating holding of <u>Young</u>). On the basis of these cases and the above analysis, we find that petitioner's alleged "involuntary" placement on MSR did not act to deprive him of good conduct time without due process.

<u>Issue # 4 - Reconfinement violates military regulations</u>

Petitioner makes an argument similar to the previous contention. Petitioner claims that military regulations require that his good conduct time cause a reduction in his sentence of confinement. Petitioner argues that since he did not waive this

abatement when he was placed on MSR, his sentence expired at the time of his MinRD and could not be revived.   See Memorandum Clarifying DoD policy on Abatement of Sentences to Confinement, § A7.1.4 (2004).   Respondent again argues that the MSR program is consistent with military regulations because petitioner was not forced to forfeit his good time and that his sentence of confinement never expired.

The court finds that petitioner has waived this claim by failing to present it to the military courts.   But, if petitioner had not waived this claim, the court would reject it.

The MSR program acts as a conditional release from a sentence of confinement.   Petitioner was placed on MSR until the expiration of his sentence of confinement or the revocation of his supervised release.   Because petitioner did not satisfy the conditions required for his release from confinement, he was ordered back into confinement.   This action did not violate the regulations stating that good conduct time is an abatement to a sentence of confinement because the MSR program placed conditions upon such an abatement. This construction should be preferred because it harmonizes the various military regulations and procedures.   It also avoids a result which would, in effect, abrogate the operation of the MSR program.   There would be no point in MSR, if good conduct time required release from confinement without conditions before MSR was ordered.   Courts read statutes as a whole and attempt to harmonize

19

and reconcile different statutes and different provisions within a single statute. Chemical Weapons Working Group, Inc. v. U.S. Dept. Of the Army, 111 F.3d 1485, 1490-92 (10th Cir. 1997); U.S. v. Johnson, 3 M.J. 361, 362 (C.M.A. 1977). This applies as well to the construction of executive department regulations. See Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1332 (10th Cir. 1982)(regulations are generally subject to the same rules of construction as statutes). This rule of construction supports the court's reading of the good conduct time and MSR regulations in this case.

Moreover, this construction was applied in the Young, Noreen, and Sanders cases mentioned previously. Those cases held that military regulations regarding the calculation of good conduct time do not affect the full term expiration date of a sentence. That term continues when an inmate is placed on parole or MSR and if the inmate's parole or MSR is revoked.

Petitioner also argues that he was discharged from the military as part of his punishment and, therefore, his release from custody terminated the military's jurisdiction over him. Petitioner cites Article 2 of the Uniform Code of Military Justice (UCMJ) where it states that "[p]ersons in custody of the armed forces serving a sentence imposed by a court-martial" are subject to the provisions of the UCMJ. 10 U.S.C. § 802(a)(7). This argument fails because petitioner's sentence has not expired.

Because the sentence continues, the military maintains jurisdiction over petitioner.

In addition, petitioner was not released from "custody" even when he was placed on MSR, because parole or MSR constitutes "custody." Parole with restrictions is generally considered a form of custody for purposes of federal habeas relief. <u>Jones v. Cunningham</u>, 371 U.S. 236, 243 (1963); <u>Calley v. Callaway</u>, 519 F.2d 184, 191 n.5 (5th Cir. 1975) <u>cert. denied</u>, 425 U.S. 911 (1976) (rule applied to habeas review of a court-martial). Petitioner cites a definition of "custody" from Article 95 of the Manual for Courts-Martial (Appendix O of Doc. No. 5) which concerns the crime of "Resistance, flight, breach of arrest and escape." The definition of "custody" in that context may be too restrictive for determining the jurisdiction of the military under the UCMJ. Even so, release on parole or MSR falls within that definition of "custody" as "control exercised in the presence of the prisoner by official acts or orders." Furthermore, military regulations recognize the continuing responsibility of persons on parole to the Commandant of the USDB. Air Force Instruction 31-205 § 10.18.8 (2004). This applies to persons on MSR because they are treated as if on parole. <u>Id</u>. at § 10.22.

In sum, the premise of petitioner's argument is faulty because petitioner's sentence and his custody by the military have not expired.

<u>Issue # 5 – failure to announce MSR as part of the sentence</u>
<u>and AFC&PB procedures</u>

Next, petitioner argues that he should not have been placed on MSR because it was not announced as part of his sentence. Petitioner also contends that the AFC&PB procedures fall short of due process.[5] We reject petitioner's contentions for the following reasons.

Petitioner relies in part upon cases involving the federal civilian supervised release program to support his claim that MSR should be announced as part of the sentence by the sentencing authority. However, MSR is different from the federal civilian program. MSR is not ordered by a court and does not extend the sentence of a defendant beyond the full term of confinement announced by the court at sentencing. Supervised release in the federal civilian system only starts once the sentence of confinement has been completed. Contrary to MSR, the federal civilian version of supervised release is an additional punishment imposed "as a part of the sentence." 18 U.S.C. § 3583(a).

Petitioner also cites cases requiring due process before the revocation of parole or loss of good time to support a claim that due process has been denied to petitioner prior to the imposition

_____

[5] Respondent does not contend that the military courts could review this issue. The failure to raise an exhaustion objection permits the court to review petitioner's claim. <u>U.S. v. Woods</u>, 888 F.2d 653, 654 (10th Cir. 1989) <u>cert. denied</u>, 494 U.S. 1006 (1990).

of MSR.  <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 786 (1973) (parole or probation); <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974) (loss of good time).  These cases are not persuasive because a person loses his "liberty" when parole is revoked or good time is lost.  But, a person may gain liberty, albeit with conditions, if he is placed on MSR.  There is nothing in petitioner's arguments which would suggest that the procedures used by AFC&PB prior to imposing or revoking MSR fall short of constitutional requirements.

<u>Issue VI - Were guilty pleas fully informed</u>

Petitioner contends that his guilty pleas were improvident because the military judge did not disclose the additional punishment of MSR at the time of his pleas.  Respondent claims that MSR is not "additional punishment."

Petitioner did not raise this issue in the military courts where review was available.  <u>Pena</u>, 64 M.J. at 267.  Therefore, petitioner has waived the presentation of this claim before this court.

If the claim was not waived, the court would find against petitioner's position.  As previously discussed, the military MSR program is not additional punishment; it is a type of parole, the "essence" of which is release from confinement before the end of one's sentence.  In this way, it differs from the federal civilian supervised release system which represents an additional punishment or restriction upon freedom imposed after the end of one's sentence

of confinement.

Parole is not a matter which must be discussed with a defendant prior to a guilty plea.  The Supreme Court has noted that it has never held "that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary, and indeed such a constitutional requirement would be inconsistent with the current rules of procedure governing the entry of guilty pleas in the federal courts."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  The Tenth Circuit has held in an unpublished decision that a state court's failure to inform a defendant that he would be ineligible for parole prior to serving 85% of his sentence was merely a failure to inform the defendant of a collateral consequence of the plea and insufficient to invalidate a plea agreement.  Perkis v. Sirmons, 201 Fed.Appx. 648, 652 (10th Cir. 2006) cert. denied, 550 U.S. 921 (2007); see also, Holmes v. United States, 876 F.2d 1545, 1549 (11th Cir. 1989) (parole eligibility is a collateral consequence of a guilty plea).

Most cases in this area involve claims that defendants pleaded guilty without the knowledge that their parole chances were somehow limited.  This case is different in that petitioner suggests that he needed to be informed at the time of his pleas that he would or could be placed on MSR.  Nevertheless, we believe the analogy of MSR to parole is reasonable and logical.  It controls the result

24

here.   The possibility that petitioner would be involuntarily
placed on MSR was a collateral consequence of his guilty plea, and
the failure of the court to warn him of that possibility did not
render his plea involuntary or improvident.

Issue # 7 - sex offender treatment

Petitioner contends that his Fifth Amendment right against
self-incrimination is violated by the sex offender treatment
requirement of MSR.[6]  Petitioner asserts that as a condition of
MSR, he was required to enroll in a sex offender treatment program
which, "[i]t is widely accepted" would require an "admission of
guilt."  Doc. No. 4 at p. 40.   Petitioner asserts that he was
presented with a form to waive his Fifth Amendment right against
self-incrimination by his probation officer.   Petitioner states
that he signed the form on threat of having his MSR revoked,
"however he decided against actually making self-incriminating
statements required by the sex offender treatment program."  Doc.
No. 4 at p. 41.

No waiver form has been produced to support petitioner's
claim, and respondent contends that petitioner was not required to
sign a form waiving any Fifth Amendment rights.   An affidavit from
petitioner's probation officer conclusively supports respondent's
position.    Petitioner does not describe what the alleged

_____

[6] The government has made no waiver or exhaustion argument in
relation to this claim.

"incriminating" questions would be, had petitioner participated in the sex offender treatment program.  For instance, petitioner does not state whether petitioner would have been required to admit his guilt regarding matters beyond those counts to which he has already pleaded guilty and been punished.  Petitioner does not state whether any admissions made by petitioner would have been referred for use in a future criminal proceeding.  Petitioner also does not allege that his MSR would have been revoked had he participated in sex offender treatment but claimed a Fifth Amendment privilege against answering certain questions.

The court rejects petitioner's Fifth Amendment challenge on this record for the following reasons.  First, petitioner has, in effect, asserted a general and blanket Fifth Amendment privilege against participating in a sex offender treatment program.  Such challenges are not favored by the law.  U.S. v. Clark, 847 F.2d 1467, 1474 (10th Cir. 1988) (rejecting a general Fifth Amendment challenge to IRS summons).  Petitioner must establish that the risk of incrimination from compelled testimony was substantial and real.  Id., quoting U.S. v. Schmidt, 816 F.2d 1477, 1481-82 (10th Cir. 1987) (interior quotations omitted).  Persons asserting a Fifth Amendment privilege are not exonerated from answering merely because they declare that in so doing they would incriminate themselves - - their say-so does not of itself establish the hazards of incrimination.  Id.  "A generalized fear of criminal

26

prosecution . . . is an insufficient basis for asserting a blanket claim of the Fifth Amendment privilege . . ." <u>Id</u>.  A similar broad claim was turned down by the Tenth Circuit in <u>U.S. v. Morgan</u>, 44 Fed.Appx. 881 (10th Cir. 2002) where the defendant was contesting a condition of supervised release requiring him to report any unauthorized contact with minors.  In that case, as in this case, the questioning did not take place.  Under those conditions, the Tenth Circuit held that a Fifth Amendment violation could not be asserted.  See also <u>U.S. v. Davis</u>, 242 F.3d 49, 51 (1st Cir. 2001) (denying objection to condition that defendant truthfully answer questions about use of aliases and falsification of identification documents where questions had not been asked yet and a realistic threat of a penalty had not developed).

Second, when the only consequence to a refusal to answer questions is the revocation of supervised release as opposed to criminal liability, courts have found that the Fifth Amendment right to self-incrimination is not implicated.  <u>U.S. v. Locke</u>, 482 F.3d 764, 767-68 (5th Cir. 2007); <u>U.S. v. Johnson</u>, 446 F.3d 272, 279-80 (2nd Cir.) <u>cert. denied</u>, 549 U.S. 953 (2006); <u>Asherman v. Meachum</u>, 957 F.2d 978, 982-83 (2nd Cir. 1992); see also, <u>Minnesota v. Murphy</u>, 465 U.S. 420, 435 (1984) (termination of probation for refusal to answer a question which might reveal a violation of probation requirements does not violate Fifth Amendment).

The case cited by petitioner, <u>U.S. v. Antelope</u>, 395 F.3d 1128

27

(9th Cir. 2005), is distinguishable.  In <u>Antelope</u>, the petitioner's probation had been revoked, a prison term was imposed, and later his supervised release was revoked for refusing to comply with a sex offender treatment program which required him to complete a sexual history autobiography and undergo a polygraph verifying his full sexual history.   The petitioner was told that any past criminal offenses he revealed could be released to the authorities, and his treatment counselor testified that the counselor was under a legal obligation to turn over information regarding offenses involving minors.   The petitioner requested an assurance of immunity, but none was received.   In sum, the loss of liberty and the risk of incrimination were more concrete and less generalized in <u>Antelope</u> than in the case now before the court.

For these reasons, the court rejects petitioner's final claim for relief.

<u>Conclusion</u>

The petition for habeas relief shall be dismissed.   This action renders moot petitioner's motion for temporary restraining order (Doc. No. 17) and motion for expedited review (Doc. No. 16).

**IT IS SO ORDERED.**

Dated this 6th day of August, 2009 at Topeka, Kansas.


s/Richard D. Rogers
United States District Judge


28